UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

UNITED STATES OF AMERICA )
) DOCKET NO. 1:19 CR 45
v. )
) **FACTUAL BASIS**
JERRELL TITO BOWMAN )
)

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the defendant's "straight up" plea in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea that the defendant will tender, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime. The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

Buncombe County Anti-Crime Task Force ("BCAT") Agent Hendricks interviewed a confidential source of information ("CI") in March of 2018 who stated that individuals were packaging large quantities of heroin, marijuana and other controlled substances at an apartment in the Dunbar Apartment Complex (which is located at 314 Peacock Lane in Arden, North Carolina). The CI identified "Aisha" as the tenant in the apartment and further identified her vehicle as a dark colored Kia sedan. The CI also stated that JERRELL TITO BOWMAN ("BOWMAN") was one of the individuals distributing drugs out of "Aisha's" apartment.

Agent Hendricks reached out to the manager of the Dunbar Apartments and asked if she was familiar with a tenant named "Aisha." The manager identified tenant Aisha Harrison who lives in Apartment # 314. The manager advised that Harrison drives a dark colored Kia and that her boyfriend drives a white Mercedes. The manager identified the boyfriend's license plate number. Agent Hendrix ran the plate and found that the Mercedes was registered to BOWMAN. Agent Hendrix knew BOWMAN from prior investigations. Agent Hendrix confirmed, via the manager, that "Aisha's" boyfriend and BOWMAN were the same person.

On March 16, 2018, the maintenance man at the Dunbar Apartments contacted Agent Hendrix and told him that he observed BOWMAN driving a silver Acura. On March 19, 2018, the maintenance man at the Dunbar Apartments contacted Agent Hendrix and stated that he observed BOWMAN take out the trash and throw it in the complex dumpster. The maintenance man then stated that he retrieved BOWMAN's trash and went through it. There was packaging consistent with vacuum sealed bags and a valet parking ticket in the name "Aisha" with Harrison's license plate number written on it in the trash.

Agent Hendricks was advised on March 20, 2018 by Officer Beddow of the Asheville Police Department ("APD") that BOWMAN had outstanding warrants for Assault on a Female and Assault With a Deadly Weapon in the Presence of a Minor. Agent Hendricks spoke to the maintenance man at the Dunbar Apartments that same day. Harrison had turned in a work request to have her apartment door fixed. Pursuant to that request, the maintenance man was in Apartment #314 when he smelled the odor of marijuana. He returned to the apartment on March 21, 2018 to repair the door when he again smelled the odor of marijuana inside the apartment. Finally, the maintenance man advised that BOWMAN was still driving the silver Acura.

Agents conducted surveillance of the complex on March 21, 2018 and observed BOWMAN leave apartment #314 with a small child. BOWMAN and the child got into the silver Acura and left the complex. Sgt. Maltby went to the door of #314 and could smell the odor of marijuana emanating from the apartment.

Agent Hendricks drafted and applied for a warrant to search the apartment. The warrant was authorized at approximately 1:30 p.m. Agents Henricks and Sales and Sgt. Maltby approached the apartment at approximately 2:00 p.m. to execute the warrant. Agent Hendricks knocked several times, but no one came to the door. The agents made entry using a key given to them by the manager so they did not have to damage the door. There was no one inside. Agent Hendricks found multiple smoked marijuana cigarettes in an ashtray on the kitchen counter. Agent Hendricks found a box for a Sig Sauer pistol on top of the kitchen cabinets. There was a holster and a partially loaded magazine in the box. Agent Hendricks opened the kitchen cabinets and found 18.23 grams of fentanyl and 3.72 grams of crack cocaine in a plastic Solo cup. There was another 47.53 grams of powdered cocaine inside a sandwich baggie box. The box also contained unused sandwich baggies which are commonly used to package controlled substances for distribution. There was also a set of digital scales with white residue on them and two bottles of "Insitol" – a common cutting agent used by traffickers – in the kitchen. Agents also recovered items consistent with the "cooking" or processing of powder cocaine into crack cocaine, including two boxes of baking soda, several plastic cups with white residue on them, and a glass dish and metal whisk with white residue on them in the kitchen. Upon searching the master bedroom, Agent Hendricks found money in the pockets of a male's denim vest jacket in the right hand closet. Agent Sales found 430.34 grams of marijuana inside a "Pioneer" stereo box in the left hand closet. Sgt. Maltby found additional money in a box in the dresser in the master bedroom. All told, they seized $11,013 from the bedroom. BOWMAN maintained the premises for the purpose of manufacturing or distributing a controlled substance, including storing a controlled substance for the purpose of distribution.

Detectives Mundy, Flanders, Patton and Rogers of the APD were concealed within the parking lot in the event BOWMAN returned to the apartment. Officer Beddow was in uniform and in a marked patrol vehicle in the area. BOWMAN pulled in and the investigators notified the agents searching the apartment. BOWMAN was still driving the silver Acura and Harrison followed behind

him in her Kia. Detectives Flanders and Mundy pulled in behind BOWMAN and took him into custody on the outstanding warrants.

While taking BOWMAN into custody, the detectives immediately smelled the odor of marijuana emanating from the silver Acura. Officer Beddow arrived on the scene and performed a probable cause search of the vehicle and seized a partially smoked marijuana cigar. He also seized a plastic bag containing 2.28 grams of fentanyl from the center console; a bag containing multiple clear plastic bags containing a total of 37.18 grams of crack cocaine, and a bag containing four clear bags of marijuana containing a total of 210.36 grams of marijuana; a loaded Sig Sauer, Model P2022, 9mm semi-automatic pistol (bearing serial number 24B330268), $1,994 and a cellphone. BOWMAN had another $587 on his person. The crack cocaine, marijuana and loaded gun were all found in a black backpack that was sitting in the rear child seat – with the crack cocaine and marijuana on top of the loaded gun. BOWMAN possessed the gun in furtherance of his drug trafficking activities.

Officer Beddow made contact with Harrison and she and BOWMAN were escorted to apartment #314. Once at the apartment, Agent Hendricks explained to them that agents were in the apartment executing a search warrant. BOWMAN immediately said "Everything is mine! She don't know about anything." Agent Hendricks gave BOWMAN a *Miranda* form. After confirming that BOWMAN could read, Agent Hendricks had BOWMAN read each right and initial that he understood each right. BOWMAN signed the form and agreed to speak with agents. BOWMAN again claimed that Harrison did not know anything about what he was doing. BOWMAN stated that he brought everything in the house and put it in the kitchen. BOWMAN wrote out a statement claiming that everything found in the kitchen was his and not Harrison's. When asked what was in the kitchen, BOWMAN admitted that there was heroin, powder cocaine and scales in the kitchen cabinet. BOWMAN also admitted to using the "Insitol" as a cutting gent to dilute his powder cocaine and heroin. BOWMAN also admitting to "cooking" or processing powder cocaine into crack cocaine. BOWMAN also wrote out a statement that the contraband found in the bedroom was his as well. More specifically, he claimed the marijuana and the money in the vest. BOWMAN also wrote out a statement that all of the contraband in the silver Acura was his as well. More specifically, he claimed the crack cocaine, heroin, gun and money. When asked how much money he had altogether (meaning what was in the vest, the box in the dresser, in the car and on his person), BOWMAN estimated $15,000.

BOWMAN's cellphone, assigned telephone number (336)344-0461, was down loaded. Although BOWMAN utilizes SnapChat, there were still several drug trafficking related text messages on his cellphone. For example, there was an incoming text on March 14, 2018 at 8:48 p.m. asking "we're u." BOWMAN responded in an outgoing text at 9:17 p.m. "Man I sold it bro my gad I got u." Then there was an incoming text on March 19, 2018 at 5:52 p.m. asking "U good?" BOWMAN responded in an outgoing text at 7:08 p.m., "Yes." Then there was an incoming text on March 21, 2018 at 11:47 a.m. asking "You good?" BOWMAN responded in an outgoing text at 12:37 p.m., "What up yeah I'm good" (references to the fact that BOWMAN had a stash or supply of controlled substances available for distribution. Narcotics traffickers often times use phrases about how they "got" someone or are "good" to refer to the availability of controlled substances).

BOWMAN was booked into the Buncombe County Detention Center and charged with a variety of State offenses including Trafficking and Felon in Possession of a Firearm. K-9 Officer Lambert had his K-9 Jedi conduct an open air sniff of several packages – one of which contained the

money from the residence. Then K-9 Officer Lambert had Jedi do another sniff of several more packages – one of which contained the money from the vehicle. Finally, K-9 Officer Lambert had Jedi do another sniff of several more packages – one of which contained the money from BOWMAN's person. Jedi alerted to the odor of narcotics emanating from the package containing the money each time.

The amount of mixture or substance containing a detectable amount of cocaine that was known to or reasonably foreseeable to the defendant was 47.53 grams; the amount of mixture or substance containing a detectable amount of cocaine base, more commonly known as "crack" cocaine, that was known to or reasonably foreseeable to the defendant was 39.9 grams; the amount of mixture or substance containing a detectable amount of fentanyl that was known to or reasonably foreseeable to the defendant was 20.51 grams; and the amount of mixture or substance containing a detectable amount of marijuana that was known to or reasonably foreseeable to the defendant was 640.7 grams.

The defendant has a previous conviction for a serious violent felony and a previous conviction for a serious drug felony. More specifically, he was convicted on or about November 20, 2003 of Assault with a Deadly Weapon Inflicting Serious Injury (Case No. 99CRS004215 in Buncombe County, North Carolina), for which he served a term of imprisonment of more than 12 months and for which his release from any term of imprisonment was within 15 years of the commencement of the offense charged in Count One of the Second Superseding Bill of Indictment. The defendant was also convicted on or about May 3, 2011 of Trafficking in Cocaine (Case No. 11CRS052353 in Buncombe County, North Carolina) for which he served a term of imprisonment of more than 12 months and for which his release from any term of imprisonment was within 15 years of the commencement of the offense charged in Count One of the Second Superseding Bill of Indictment.

Special Agent Mark Gage of the Bureau of Alcohol, Tobacco, Firearms and Explosives examined the Sig Sauer 9mm pistol seized in this case. He determined that it was manufactured in New Hampshire and, thus, traveled in interstate commerce prior to the defendant's possession of that pistol in North Carolina on March 21, 2018.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

THOMAS KENT
ASSISTANT UNITED STATES ATTORNEY

Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis and the Second Superseding Bill of Indictment in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis and the Second Superseding Bill of Indictment. I hereby certify that the defendant does not dispute this Factual Basis.

JStewart [signature]
JACK W. STEWART, Attorney for Defendant

DATED: 6/29/20