UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Asheville Division)

----------------------------x
UNITED STATES OF AMERICA :
Plaintiff, :
:
vs :
:
: Criminal Action:1:19-CR-45
:
JERRELL TITO BOWMAN, :
Defendant. :
----------------------------x

February 19, 2020
Asheville, North Carolina

The above-entitled action came on for Motion to Withdraw as Counsel Hearing before the HONORABLE W. CARLETON METCALF, United States Magistrate Judge, in Courtroom 2, commencing at 12:24 p.m.

**APPEARANCES**:

On behalf of the Plaintiff:
**JOHN D. PRITCHARD, Esquire**
Office of the U.S. Attorney - WDNC
233 U. S. Courthouse Building
100 Otis Street
Asheville, North Carolina 28801

On behalf of the Defendant:
**FREDILYN SISON, Esquire**
Federal Defenders of WNC
1 Page Avenue, Suite 210
Asheville, North Carolina 28801

Tracy Rae Dunlap, RMR, CRR 828.771.7217
Official Court Reporter

**I N D E X**

Page

Reporter's Certificate.......................27

P R O C E E D I N G S

THE COURT: The Court will call the case of United States versus Jerrell Tito Bowman. This is case 1:19-CR-45. This matter is before the court on a motion to withdraw having been filed by the attorney for the defendant, Ms. Sison.

Ms. Sison I'll also note that I see the defendant has filed a document, document 17. Your motion is document 18 on the docket. There does appear to be some paperwork. I say he filed it but I'm not sure he filed it. Maybe the U. S. Attorney's office filed it after it was received by the U. S. Attorney's office. That would be document 17.

In any event, it is your motion to withdraw so I'll be glad to hear from you.

MS. SISON: Your Honor, there may be some items that are attorney-client privilege so I would ask this court to conduct at least a portion of this ex parte.

THE COURT: What's the government's position on that?

MR. PRITCHARD: That's fine, Your Honor.

THE COURT: All right. Anything you would like to tell me on the record before I close the proceeding, Ms. Sison?

MS. SISON: Your Honor, just so you know, I have

spoken to Mr. Kent, who is the attorney of record on this. I do note that this case is set for trial in less than two weeks. Mr. Kent, I believe, is in Charlotte if I'm not mistaken. He said that he is appearing before the Grand Jury to supersede the indictment to include an 851 notice and that's why he wouldn't be here today.

I had explained to him that I am filing the motion so he is aware of the motion. He's not aware, obviously, of all the attorney-client materials involved in it, but I have told him that. I haven't asked him for his position just that I was going to file this today and ask the Court to inquire in to the motion.

THE COURT: All right. Thank you.

Based on the representations of counsel it would appear that there is a possibility that attorney-client privilege information could be discussed. So I will grant that request and we'll --

MS. SISON: Before we do that. Your Honor, I just would like to note that when you had made a statement about document 17. I looked at that. And I'm only looking, Your Honor, at the filed document. I'm not making any references to anything else regarding that. I do note that there is some sort of Certificate of Service and that the -- I guess Mr. Murray, who is the Chief U. S. Attorney, and Mr. Kent were also served.

When I spoke to Mr. Kent he told me his office actually received two copies. So what he thought is maybe that Mr. Murray had received one and they just put the two of them together because it was Mr. Kent's case. We don't know if the clerk's office or -- and it says "presiding judge," Your Honor. So we don't know if they received it. Mr. Kent informed me he went to the clerk's office yesterday to find out if they had received a copy. They could not find a copy so I believe he gave them the second copy that the office received. And I believe that that's how it got filed. I had nothing to do with the filing. I just want that on the record.

THE COURT: All right. I appreciate that information. It would appear that the letter -- based on the copy I have in front of me, which is the filed copy as document 17 was received, there's a stamp at the top that notes it was received by the U. S. Attorney's office. So apparently that was what was filed. In any event, I'll note, Ms. Sison, you did not file that.

All right. As indicated, as there may be a potential for the discussion of attorney-client privilege content, marshal, if you would please seal the courtroom. Madam Clerk, if you would please seal the record.

MR. PRITCHARD: Judge, I just have one question based on the discussion we had before.

THE COURT: Yes, sir.

MR. PRITCHARD: Just to clarify. On page three of -- well it's on page three of five as filed in document 17. I think it was our belief, again, that the document had been filed -- copies had been sent to the clerk of court and some judge, I suppose. And it was only recently that I guess we became aware that if the clerk had actually received one or the court had received one, which is customary, it had not been filed. And that's why Mr. Kent took that up yesterday after consulting with Ms. Sison to make sure that there was some version in the file as we usually see on those type of ex parte documents. And I think Ms. Sison is aware of all that.

THE COURT: All right. That would appear to be a document that, by its terms, has been sent to the United States attorney, Mr. Murray, as well as AUSA Kent. It indicates it was sent to the clerk of court, it indicates it was sent to a presiding judge -- I will tell you I do not recall having received this. Of course I would be the referral magistrate judge on this case. In any event, we've established how it was filed at least. It went to the U. S. Attorney's office and it was filed by them.

MR. PRITCHARD: I just didn't want it to be out there that Mr. Kent sat on it for a month or something

like that without letting people know or something like that.

THE COURT: Understood. Thank you.

(Sealed Portion of the Proceedings.)

THE COURT: It would appear now that the courtroom has been sealed, and I'm also advised that the record has been sealed as well. Ms. Sison, I'll now hear from you further.

MS. SISON: Your Honor, and I will tread carefully because I have not gotten from my client a waiver of his right to have materials that he and I discussed be published before the court. So if I can I'll just work around that. If Mr. Bowman would like to waive it we could certainly do that.

The reason I'm requesting that I be released, as well as my office, Your Honor, is that the path of this particular defense -- it's to go to trial in a couple of weeks -- concerns me, and the way it's to be presented to the jury is not a mode that I would be comfortable with. In fact I cannot present it the way that is being requested of me.

THE COURT: Ethically?

MS. SISON: Ethically, Your Honor. I mean there are other things that are involved here again, because of attorney-client privilege, I can't disclose it. I think

part of the reason that Mr. Kent filed the document 17 is so that the Court can get a full picture of where he believes that the case is going, for lack of a better word. Again, I don't want to reveal any confidences. Just so that the Court can get a full story of the way that Mr. Bowman believes that this court should be aware of what he wants to do.

I say that because since it was given to Mr. Kent, and I'm assuming the other people, I figure I can talk about this as document 17. I cannot do what is being requested of me, i.e., to present this kind of defense. Also, Your Honor, one of my concerns is that Mr. Bowman made --

THE COURT: Let me ask you a question. I'm sorry to interrupt you, Ms. Sison. Looking at document 17. It's addressed to you but, as we've talked about a moment ago, it appears that copies were sent to the government and perhaps others, perhaps the clerk or perhaps a judge. This was something that as you've said you did not file and you did not prepare. This was something that the defendant prepared, is that correct, to your knowledge?

MS. SISON: I'm sorry, Your Honor. I'm just trying to figure out what's privilege and what's not privilege, or what's conjecture on my part.

THE COURT: Let me back up then and be clear. I

am not asking you and don't want you to invade attorney-client privilege so don't feel that any of my questions are intended to do that; they are not. As a matter of fact, you're perfectly fine keeping that confidential. This is not something that -- you did not file this document that is document 17.

MS. SISON: No, Your Honor. This is not something that I would file. I mean it's the wrong, I guess, format that this court would normally accept from our office.

THE COURT: Well and when you say you are unable to present the case ethically to the jury as the defendant is requesting. I have reviewed document 17 and, frankly, it is somewhat unclear to me what this is designed to do or what this really means.

MS. SISON: Well maybe I could speak at least to one of the paragraphs, Your Honor, on page one, paragraph two. It indicates that the case is to be presented per his directions and any subsequent directions. As you can see, this letter is addressed to me. And based on the letter I or anyone else would, I guess, surmise that the writer of the letter is telling me that I'm to present the case in the manner that he believes should be presented. And given some of the items in here, obviously, this is not something that I would have done.

My concerns is with paragraph four.

Mr. Kent had indicated to me that it's his reading of paragraph four as an admission. Obviously, that's not something that I would want any of my clients to do unless there is a plea agreement or some sort of wish to plea. However, some of the other requests -- it says that this person would plead. But as I understand it this is not a -- it's a plea but not of guilt, and it conflates what I believe may be some civil matters or at least terms.

The only thing I've ever seen a letter in a criminal sense, Your Honor, is when we have to file a -- try to subpoena somebody in a different jurisdiction like, for example, you know, Guatemala. If we wanted to subpoena somebody we would write this letter to that jurisdiction. So this is not something that we normally would do and, certainly, we wouldn't file it in this court. We may file a courtesy copy but we certainly would wouldn't file it.

So on that basis, Your Honor -- and, again, some of the other matters I can't discuss because of attorney-client privilege and I feel it would be unethical for me to go forward as directed. Again, I'm referring to this letter that indicates I'm to be directed to pursue this litigation a certain way which

I'm not willing to do because I think it is unethical for me to do so.

The other thing that I'm concerned about, Your Honor -- and this is probably the most important -- is I think that there are -- Mr. Bowman's position in this is getting worse. And I cite as an example what Mr. Kent is doing in front of the grand jury. And he did so and he did warn me about it, that if the plea is not accepted -- I should say if the plea offer is not accepted that he would file an 851 notice which would open up the consequences and make it more dire to Mr. Bowman.

And my concern is, because our communication has broken down to the point where I cannot have Mr. Bowman listen to my advice, that he is getting himself in to a worse off position than had he a different attorney. Now I'm not saying he may listen to that attorney, he may not, but he's certainly not listening to me because of the communication. And that's not putting fault on him. It's just, maybe, something that's happened between us so that I'm concerned he's not getting effective representation because of that, and because it's getting worse for him as far as what can happen to him if there were a conviction. And I say "if there's a conviction" because of what was filed in court there may well be.

THE COURT: Do you think there's been a complete

breakdown of communication?
MS. SISON: Yes, Your Honor. I mean I think it's totally broken down. And I have hoped, over the past couple of weeks, that it would improve. And I note it was few weeks, and there were times that I thought that it would. But given what has transpired in the last week I can't say that it's improved. In fact, it's devolved further.
THE COURT: When was the last time that you-all talked about this matter?
MS. SISON: I visited him at the jail on Sunday to -- Mr. Kent had emailed me on -- I believe it was Saturday, maybe it was Friday night, after I informed him that Mr. Bowman was not willing to accept the plea offer. So that's when Mr. Kent indicated that he would file an 851 notice. And I felt I needed to discuss that with Mr. Bowman so that he's aware of what the government's doing, so that would have been Sunday.
THE COURT: All right. And that -- well the motion in this case was filed, I believe, earlier this week. Today's Wednesday. The motion was filed on the 18th, and that would have been yesterday on Tuesday.
MS. SISON: That's correct, Your Honor.
THE COURT: And I take it that --
MS. SISON: Part of the reason, Your Honor, is I

needed to notify Mr. Kent. So I notified him the first business day which would have been Tuesday.

THE COURT: Monday, of course, was President's Day so it was a holiday.

All right. Of course there are certain factors that the Court has to consider: The Gallup factor, the timeliness of the motion, the adequacy of the discussion here. That's what the case law would require, as well as the breakdown of communication.

Do you think there is the possibility that the relationship could be repaired and restored? Now you have not told me who wrote this letter. It appears to be signed, it appears to bear the defendant's signature. Whether or not he wrote it and/or signed it is a separate matter that I'm not asking about at this time.

But if we were to assume that he wants you to pursue jury argument and presentation that you feel uncomfortable doing, and if he were to reverse course on that, would you be willing to continue representing him? Do you think that could be accomplished?

MS. SISON: Well there's an additional matter that's related to that, Your Honor, that I cannot discuss. So it would have to be two things. And I would only continue if I was allowed to present the defense that I believe is a legal defense, an acceptable defense,

and I'm not sure we're at that point. I know Mr. Bowman wants to have his day in court, and he wants it in a specific way, and I understand that because he is the defendant in this case. It's just that, as an officer of the court, I don't believe I can -- under the North Carolina Rules of Professional Responsibility I cannot do it, and it is related more to the second factor that I can't speak of: Attorney-client privilege.

THE COURT: How can the Court assess the motion under that second factor then?

MS. SISON: Your Honor, I can -- I'm sorry. I can't -- I can only do it if he waives. And perhaps that's something that he is willing to do, but at this time I cannot.

THE COURT: All right. Let me give him an opportunity to address the Court.

Mr. Bowman, I'm now going to give you an opportunity to speak. Let me advise you of a couple of things before you do so. First of all, the decision as to whether you speak at this time is entirely up to you. You're not being forced or pressured in any way about that. I will be glad to hear from you if you want to tell me about this issue.

Let me also remind you that while we are currently in a sealed proceeding -- that is the record is sealed at

this moment -- I would still remind you that you have the right to remain silent, and that anything that you say about the case could be used against you by the government.

Further, the only issue -- there's only one question that I'm dealing with today and that is Ms. Sison's motion asking to be relieved of the case and asking to withdraw from the case. She has to ask permission for that, and that's what she's done. That's the only issue I'm trying to understand and deal with today. So any statements that you do make should be directed to that question. Do you understand all of those things?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then go right ahead if you have anything you'd like to say.

THE DEFENDANT: Do you want me to stand?

THE COURT: Yes, sir.

THE DEFENDANT: Your Honor, I'm nervous a little bit. I'm a surety and I have a right to subrogation, and all I ask her to do is subrogate. I'm a surety and I have a right to subrogate, and all I ask for her to do, do what I ask her to do with my paperwork. And then I told her this is a civil case. This -- I mean I told her this is a commercial charge, and then she's telling me

this it's not a commercial. That's where the disagreement came. She told me it's not a commercial crime, and then she come back and tell me it is commercial.

So in the Federal Civil Procedure Rule number 2 it says it right there that this is a civil case. That's why the disagreement. All I asked was to present my legal work that I asked her to do, and that's all I asked for because it's law.

THE COURT: All right. Mr. Bowman, let me advise you. You have been charged in this case with crimes, certain crimes as described in the Superseding Bill of Indictment. That document is document four in your case. It was filed on August 7th 2019.

Ms. Sison, is that the most recent document that you're aware of, charging document? There's not -- you mentioned that Mr. Kent is looking at a potential second superseding indictment. But it would appear to me that the Superseding Bill of Indictment filed on August 7th would be the current charging document. Is that right?

MS. SISON: Yes. What happened, Your Honor, I is think there was an initial Bill of Indictment. But before he appeared in court they superseded, and I think that was because of felon in possession language.

THE COURT: So, Mr. Bowman, the document that I

have just referenced, the Superseding Bill of Indictment, is the charging document in this case. This is not a civil case. This is a criminal case. You've been charged with crimes that are described in the superseding Bill of Indictment, and Ms. Sison has been appointed in this case to represent you on those criminal charges. That's what's happening here. This is not a civil matter. The government has filed charges against you, and they are prosecuting you for things that they allege that you did here.

What else would you like to tell me, if anything, about this matter?

THE DEFENDANT: And I'm accepting the charges. That's the thing. That's why I asked for subrogation because I'm accepting all the charges, you know, and I'm not denying the charges. I'm accepting all the charges. That's the point that I have in my paperwork. That's why I sent it in. That's why I asked her to represent it. And she tells me she's not going to do it because it's not law.

THE COURT: In an attorney-client relationship there's two parties. There's the attorney, and there's the client. Each one of those individuals has certain rights and responsibilities. The attorney has certain jobs, and the client has certain jobs. There are some

decisions that only you can make as the client. There are some decisions that she would make as the lawyer. Whether or not you want to plead guilty, for example, would be up to you. It's entirely your choice as to whether you want to plead guilty or go to trial. That would be something that you would decide.

Ms. Sison, as an attorney, is constrained by the rules of ethical conduct that are put forth by the North Carolina Bar and, so, there's only certain things she can do. She has to operate within the ethical guidelines that constrain lawyers. What she's told me a minute ago is that you are wanting her to put on a defense that she understands, or that she interprets, to be something she can't do. So there's a problem there.

There's apparently two issues that she's raised, at least two. One would be this issue about the defense. The other is a separate matter that she has not disclosed, and I don't ask you to disclose it either. But do you believe that you can go forward with her as your lawyer?

THE DEFENDANT: No, sir, because there's been lies. And then, like I said, Your Honor, she don't want to proceed with my work. So I don't think we can move forward. I'm not asking for a trial. I'm pleading guilty because they're forcing a trial on me. I never

asked for a trial. That's why I was asking to present my case, present the legal work that I gave to her, but she's not doing it. So now they're forcing a trial on me but I'm accepting the charges. I'm not denying the charges because I'm asking for subrogation.

THE COURT: I don't know what you mean by "subrogation" in a criminal context. That is a term that's often used in civil cases, but I'm not familiar with that term in a criminal context. So I don't know what you mean about that. Now if you're telling me you are wanting to plead guilty and you don't want to have a trial, that's something you can discuss with Ms. Sison and she can discuss with the attorney for the government. But that would have to be done -- you would have to be working with her as her client, and you as her client and she as your attorney, to come up with that agreement and whatnot. You don't think you can do that going forward?

THE DEFENDANT: Your Honor, I really don't know. Because we -- the altercation we had, it's just too much. I just feel like she's not working for my best interest, and that's where the fallout came at.

THE COURT: Let me put it this way. If there's been some disagreement, that happens oftentimes, and general disagreement about matters is one thing. Adults can oftentimes talk with each other and work through

those kind of rough patches. If that's where you have, that's one thing. If you are in a position where you and Ms. Sison are just not talking, or you are unable to communicate, or if you're asking her to do something that she ethically cannot do, that's something else, and that's what I'm trying to understand today.

Now she said she came over and talked with you on Sunday. That's the last time you-all talked was just a few days ago?

THE DEFENDANT: Yes, sir.

THE COURT: Anything further you want to tell me about your position, or whether you think you could work with her going forward?

THE DEFENDANT: Another thing I asked for was a bond reduction, and I never got brung up. All I keep hearing is I'm going to get denied and denied. And I just told her I would rather for the judge to deny me. I've been to rehab. I don't stay in this city. I've been coming to court for 18 months for this same charge. I knew I was going to get indicted and I came to court. I'm not a flight risk. I haven't touched a drug since my last arrest. I was working and doing landscaping. I was on pretrial.

I did everything. I complied. And then when I come to court I get indicted. I at least wanted to

prepare myself and my kids before I get locked up. And I never had a chance to even hear you tell me that -- I want to hear you say I can't get a bond or I can't get house arrest or -- I never got that opportunity, and that's what our disagreement came too.

And then it's like you're forcing on me a trial that I'm not even -- I'm pleading guilty to the charges, but it's like we ain't seeing eye to eye on the disagreement and saying it's not law. I did everything what I'm supposed to do but just not -- I understand you (Inaudible), you know, I have. I understand.

But it's like we ain't seeing -- I'm pleading guilty to the charges, but it's like we ain't seeing eye to eye, and the disagreement is saying it's not law. I did everything what I supposed to do but it's not law. I understand that, you know, I have to figure out a best plea and go from there.

THE COURT: Mr. Bowman, do you understand that you do have the right to be represented by an attorney in your case? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you may recall at a prior proceeding, probably at your initial appearance, it was explained to you that you have three options. You can either hire your own attorney using your own money, or

you can represent yourself, or you can ask the court to appoint a lawyer for you if you can't afford one. Do you remember that?

THE DEFENDANT: Yes, sir.

THE COURT: And Ms. Sison, I believe, if I'm reading the docket correctly, was appointed in that regard. If she were to be allowed to withdraw as your attorney and allowed to exit the case you would want another attorney, I presume, in your case to represent you.

THE DEFENDANT: Yes, sir.

THE COURT: You would be entitled to an attorney. You're not entitled to choose your attorney in that regard unless you go hire one yourself. If you have a court-appointed attorney you can only ask for an attorney and that person would be appointed. Why would the same issue here not occur if another attorney came in and represented you? Would you have some of the same problems, do you think?

THE DEFENDANT: I can't say, because I haven't met -- I haven't met one yet so I don't know what, you know, until we talk about terms and see how they go from there.

THE COURT: All right. Anything further you want to tell many me, Mr. Bowman?

THE DEFENDANT: No, sir, that's it.

THE COURT: All right. Ms. Sison, I'll give you any final response here before we re-open the proceeding.

MS. SISON: Your Honor, as I understand it, it sounds like he said he'll accept the charges. Again I'm confused because there is a plea offer that was made by Mr. Kent in December, and I have the plea documents. They stayed the same. They're still the same offer but that's the problem. I'm not quite sure where we're going because, initially, that's what I thought we were going to do. Then he did want to do that. So even at this point I'm not sure what he wants to do.

I mean, again, I think we're still stuck with he wants the case presented a certain way, and I still -- it sounded -- from when he spoke to you it sounded like he's pleading, but I don't know. So the only thing I can tell this court is that I think he's better off with another attorney so he could start fresh.

I mean he told you he doesn't trust me. He feels like I've lied to him and that I haven't done anything. So the thing that would be different with the new attorney is he would be starting from, you know, a new foundation. So that would be the biggest thing. So maybe with that attorney he would be able to at least make the choices that he wants and be in a better place so that there's trust in there, and that attorney may

lead him to whatever he wants to go.

THE COURT: Based on what the defendant has said here to me in this sealed proceeding, does that give you any more comfort about proceeding or change your position in any regard?

MS. SISON: Well, Your Honor, it's no different than what we started out before where, you know, he -- I'm just quoting from what he said to you. He said he'll accept the charges. Well there's three charges, and the offer was to one. The three charges are bad. I mean if he chooses one of the charges we're looking at a 360 to life sentence possibility. I'm not saying that's what he would get. I mean, with acceptance, it may not be.

So that's not accepting the charges. That's not what we would do. I mean the one that was offered, it's not the best one but it's in a better place because we can ask for a departure. So, based on what he said, I did not hear him say I'm going to accept the charges, I'm going to plead and we're going to work on sentencing, and that seems to be the issue. I don't think that's what he said to you. And, again, from what I heard, it sounds like he did but he didn't.

THE COURT: Well let me ask you the same question I asked him. If a new lawyer is appointed to represent him, how is that person and Mr. Bowman -- how are they

going to be in any different situation than the two of you are right now?

MS. SISON: Your Honor, I mean, part of it is this person is starting from a whole different position than I'm at. I feel as if I'm already -- he and I don't have good communication. He doesn't trust my advice and he doesn't think that I'm working in his best interest. The new attorney doesn't have any of that baggage. So whether or not -- that new attorney may have different advice for him, but I think that's something that at least Mr. Bowman should get so that he's got an opportunity to create a new relationship, obviously, an improved relationship with that person. So I do think it's different if you have somebody.

Again, Your Honor, I am concerned because these charges are serious. And his criminal history is such that unless he does something far away from what's been filed in document 17, I think, can only hurt him. So that's the difference.

THE COURT: All right. Thank you, Ms. Sison.

Mr. Bowman, as I heard you just a minute ago you, want Ms. Sison -- you would like the Court to allow Ms. Sison to leave your case and have a new attorney appointed for you. Did I hear you correctly about that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Marshal, you may re-open the courtroom.

Madam Clerk, please re-open the record.

(Back in open court.)

THE COURT: Ms. Sison, anything further that you would like to put on the record publicly?

MS. SISON: No, Your Honor.

THE COURT: Thank you.

Mr. Pritchard, anything further from the government?

MR. PRITCHARD: No, Your Honor.

THE COURT: Does the government take a position with regard to Ms. Sison's motion to withdraw?

MR. PRITCHARD: Mr. Kent indicated he is not opposed to it, Your Honor.

THE COURT: It would appear to me that the motion was filed promptly after the last discussion between counsel and the defendant on the first business day after the holiday, and that would be just under two weeks prior to trial.

Given what I have heard, however, I do find that there is good cause for the motion and will allow, without opposition by the government, the motion to withdraw, and the Federal Defenders' Office will be directed to assign new counsel.

Mr. Bowman, as I have just indicated, Ms. Sison will be allowed to withdraw from your case. The Federal Defenders' Office will assign a specific lawyer to your case going forward, and that person will be in contact with you about this case.

Anything further from the government, Mr. Pritchard?

MR. PRITCHARD: No, Your Honor.

THE COURT: Ms. Sison.

MS. SISON: No, Your Honor, thank you.

THE COURT: Then that will conclude all the matters in Mr. Bowman's case for today.

(Off the record at 1:00 p.m.)

**CERTIFICATE**

I, Tracy Rae Dunlap, RMR, CRR, an Official Court Reporter for the United States District Court for the Western District of North Carolina, do hereby certify that I transcribed, by machine shorthand, from the court's audio recording system, the proceedings had in the case of UNITED STATES OF AMERICA versus JERRELL TITO BOWMAN, Case Number 1:19-CR-45, on February 19, 2020.

In witness whereof, I have hereto subscribed my name, this 14th day of December, 2020.

__/S/__Tracy Rae Dunlap__
TRACY RAE DUNLAP, RMR, CRR
OFFICIAL COURT REPORTER