UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Asheville Division)

----------------------------x
UNITED STATES OF AMERICA :
Plaintiff, :
:
vs :
:
: Criminal Action:1:19-CR-45
:
JERRELL TITO BOWMAN, :
Defendant. :
----------------------------x

October 22, 2020
Asheville, North Carolina

The above-entitled action came on for Sentencing Hearing before the HONORABLE MARTIN REIDINGER United States District Judge, in Courtroom 1, commencing at 10:22 a.m.

**APPEARANCES**:

On behalf of the Plaintiff:
**THOMAS M. KENT, Esquire**
Office of the U.S. Attorney - WDNC
233 U. S. Courthouse Building
100 Otis Street
Asheville, North Carolina 28801

On behalf of the Defendant:
**JACK W. STEWART, Jr., Esquire**
Post Office Box 1920
Asheville, North Carolina 28802

Tracy Rae Dunlap, RMR, CRR 828.771.7217
Official Court Reporter

**I N D E X**

Page
Reporter's Certificate........................32

P R O C E E D I N G S

THE COURT: The next matter we have this morning is United States versus Jerrell Tito Bowman which is before the court for the sentencing of the defendant pursuant to his plea of guilty on the charge of possession with intent to distribute cocaine, cocaine base in excess of 28 gram, fentanyl, heroin, and marijuana, in violation of 21, U.S.C., Section 841, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18, U.S.C., Section 924(c), and possession of a firearm by a previously convicted felon, in violation of 18, U.S.C., Section 922(g)(1).

Mr. Stewart, good morning.

MR. STEWART: Good morning, Your Honor.

THE COURT: Is the defendant prepared to proceed?

MR. STEWART: We are. If I might have just one minute. I was presented with a forfeiture notice, and I need to explain that to him.

THE COURT: Okay. You may take a few moments to do that.

(Discussion held off the record between Mr. Stewart and the defendant.)

(Back in open court.)

MR. STEWART: Your Honor, please, we're prepared

to go forward. Thank you.

THE COURT: Mr. Kent, good morning to you.

MR. KENT: Good morning, Your Honor.

THE COURT: Is the government prepared to proceed?

MR. KENT: Yes, Your Honor.

THE COURT: In preparation for the hearing this morning I have reviewed the presentence report and have noted that there are no objections that appear have been file there had to. I have not seen any motions, I've not seen any sentencing memoranda. Are there any such items that have been submitted in anticipation of this hearing? Any for the defendant?

MR. STEWART: Not from the defense, Your Honor.

THE COURT: Any from the government?

MR. KENT: No, Your Honor.

THE COURT: With regard to the guilty plea. Since I was the one who took the guilty plea there is no purpose in confirming the guilty plea as part of this proceeding here today. I will note, however, on the record that from the hearing that we conducted in this matter on June -- on or about June 29th of this year, in this courtroom before me, that the defendant did in fact make a knowing and voluntary plea, and that the defendant showed and demonstrated he understands the charges, potential penalties, and the consequences of his plea.

Also, as part of that hearing, the factual basis for the plea was presented to the Court, and the Court then found, and does now confirm, that there is a factual basis for the defendant's plea to the counts in the indictment to which the defendant has pled.

Mr. Bowman, I need for you to stand for a moment please. Mr. Bowman, there is a document that has been prepared by the probation officer. The document that I'm talking about, on its front page, on the upper left-hand side, has a caption that reads "United States of America versus Jerrell Tito Bowman," and then on the upper right-hand side of the front page it has a title that reads "Presentence Investigation Report." I see that your attorney is showing you a copy there at your table. Have you seen this document prior to today?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an opportunity to review it with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the contents of that document?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Stewart, have you had an adequate opportunity to review the presentence report with Mr. Bowman?

MR. STEWART: I have, Your Honor.

THE COURT: Are you satisfied that he understands the contents of the presentence report?

MR. STEWART: Yes, sir.

THE COURT: Okay. Thank you.

Mr. Bowman, you may take your seat.

With regard to the presentence report. As I noted earlier, there were no objections that were filed to the presentence report. Are there any issues regarding the report that we need to take up? Any for the defendant?

MR. STEWART: No, sir.

THE COURT: Any for the government?

MR. KENT: No, Your Honor.

THE COURT: With that the Court will accept the presentence report as written. Based thereon, the calculation of the guideline range is as follows. With regard to counts one and three the total offense level is 26. The criminal history category is category V. Therefore, with regard to counts one and three, the guideline range calls for a term of imprisonment between 120 and 137 months. However, with regard to Count Two, that being a count under section 924(c). In light of the statutory requirement that that be a consecutive sentence that guideline needs to be added to the guideline for counts one and three. Therefore, the total combined

guideline range calls for a term of imprisonment between 180 and 197 months.

Mr. Stewart, did I calculate all of that correctly?

MR. STEWART: You did. Yes, sir.

THE COURT: Do you agree, Mr. Kent?

MR. KENT: Yes, Your Honor.

THE COURT: Mr. Stewart, let me hear from you. What is the appropriate sentence for me to impose with regard to Mr. Bowman?

MR. STEWART: Thank you. Good morning. When I last appeared with my client before the court on June 29th, at the time we did the plea, I'm sure this is a memorable case because we actually appeared to pick a jury -- select a jury that morning because we had been unable to come to a resolution. My client, at that time, on his own, decided to enter a plea straight up to the three offenses and, of course, that is what has brought us here today.

The courtroom looks a lot different today than four months ago when I was here.

THE COURT: Today is the first day things were reconfigured back to the way, or close to the way, they used to be. Obviously, the jury box looks a little bit different. But when we have jury trials starting week

after next they -- those jury trials are going to look a lot like they used to.

MR. STEWART: Well that's good. Although I must say, sitting out in the gallery when I first walked in, this is reminiscent, it seems to me, of the jury box of Nuremberg. That's sort of what that reminded me of. Nevertheless, I'm glad to see things are returning to the state of normalcy.

In any event, when we last appeared before the Court on June 29th, my client pled guilty to three counts and that's what brought him here today. This is one of those cases, Judge, where Mr. Bowman is facing -- really what he's facing is the potential of three charges, of two of them which has mandatory sentences. So he is facing a significant sentence because of the guilty plea he entered, and I'm going to urge upon the Court to consider giving him whatever that minimum mandatory sentence is and no more. Even with that, that will be a substantial sentence for my client.

Tito is 35 years old. You know from the presentence report, Judge, he was born and raised here. He's single but he's the father of a child that's five years old, and he has really been a big part of the life of a younger child who's about four-and-a-half. So when you speak to him he'll tell you he really has two

children he's raising, and I think that's true.

As I said, he was born and raised here. He went to school here. He completed the Tenth Grade and has had no formal education beyond that.

As far as health issues goes. Tito is in good health, I think, except for his eyes. He's had an issue with glaucoma in both of his eyes which, I think, is significant for a young man his age. There's family history of that, if Your Honor please, and I'm going to ask Your Honor call that to the attention of the Bureau of Prisons when he goes in only because eye issues, as you well know, are the kind of things, if they're not treated or diagnosed, oftentimes the damage is irreversible, and for someone who's 35 years old I just don't want that to happen.

My client does have a fairly long and well documented history of drug use that was not denied to the probation officer. The only treatment I could find that he's received in his background is treatment he was actually involved in at the time he was arrested on this offense by the federal government. He was in Charlotte engaged in treatment when he was taken into custody. And you probably also noted from the presentence report when he was asked about that I think he really wants to get clean and stay clean. He's certainly been in custody

long enough to be that, but I would make two requests of this court.

I would request, first, that you recommend whatever facility Mr. Bowman is sent to that he be able to avail himself of any educational opportunities. He's only completed the Tenth Grade. He would like to go on, I think, and get his GED, and perhaps even get some vocational training. You can see from his work record he really has no discernible job skills. And it's my hope when he eventually matriculates back in to society he will have some skills perhaps he can acquire while serving his sentence.

I would also ask the Court to recommend Tito for participation in the drug treatment program. As I said a minute ago, he certainly has a history of this. He's expressed a desire to do that. He was engaged in that at the time he was taken in to custody. So I think he's well motivated to do that.

Your Honor might also remember when we appeared in June that Mr. Bowman made it clear when Your Honor enters your sentence and your judgment today that it is his intention to appeal that. So I will make the oral request, as far as notice of appeal, at the conclusion of the proceeding today, and I will certainly follow that with a written notice within the 14 days so we can follow

through.

Judge, the only other thing I really wanted to say to the Court about this case is this. This has been an exceedingly difficult case for me on a lot of different levels. I don't mean to imply by what I'm going to say that Mr. Bowman in any way is not guilty or is not culpable of the offenses he's pled guilty to because he is, but I want Your Honor to know that in some way -- in some way, maybe because of his own really illogical, even irrational behavior about this case, I think Tito is sort of a victim of his own naivety here.

From the time that I was first appointed and met with him I'm really unaware of the extent of the relationship he has with this individual by the name of Charles Lee. Lee is that person who purports to be his power of attorney, who has had innumerable filings with the court. You've seen those. They've crossed the court's desk as they have mine. They really are meritless and have nothing to do with this case.

That being said. I think Tito, in no small sense, has been misled, maybe even deceived, as certainly duped by information he has received from this third party source. I have tried my best during the course of my representation in this case to advise him of his rights in how the court works and what he could expect even here

today by virtue of his behavior. Mr. Bowman, in most respects, has chosen to reject that advice and has said to follow whatever advice or counsel or support he was getting from this individual by the name of Lee.

So I mention that only to say that in many ways I think Tito has been victimized by that relationship. And I was grateful when we appeared before the Court on June 29th and, on his own accord, he entered a guilty plea to offenses that he had literally admitted to at the time he was taken into custody. But I want you to know this is not someone who is just hardened and malignant and trying to deny his role in any offense.

I think he has simply chosen to place his trust and his faith in someone who was outside of the ordinary process and practice of this court system and, I think, by doing that, I think in many ways he has been deceived and given poor advice. Thank you.

THE COURT: Okay. Thank you.

Mr. Kent, what is the position of the government?

MR. KENT: Thank you, Your Honor. I'd ask that the defendant be sentenced within the range, however not at the bottom of the range, not at the minimum, but something closer to the middle. I believe that would reflect a number of things that are particular to this case and particular to this defendant.

One, a sentence towards the middle of the range would adequately reflect the seriousness of his case. The defendant had supplies of crack, fentanyl, marijuana, as well as cash, and a loaded gun in his vehicle. He had additional supplies of crack, fentanyl, cocaine, and marijuana in his apartment, as well as a large supply of cash. There's evidence in the PSR, as well as would have been introduced at trial, that he was cutting drugs or diluting them in the apartment, that he was cooking or processing powder cocaine in to crack cocaine at the apartment, he was weighing and packaging drugs in the apartment, and there was evidence from his cell phone he was distributing those drugs to a number of customers.

I believe one of the reasons I would cite for giving him something within the middle of the range is so that the sentence affords deterrence for the defendant, adequate deterrence, as well as promotes respect for the law. He is in the second highest criminal history category. He is one point away from being the highest possible criminal history category.

I don't believe something at the bottom would adequately reflect the seriousness of his past criminal history. Coming into this case he has nine prior felony convictions stemming from four prior state cases. Most drug trafficking defendants we see start off using drugs,

and they tend to start off with minor offenses, then eventually graduating to property offenses and getting involved in drug trafficking. Sometimes their felony here is their first drug trafficking felony, and sometimes it's their second or more.

In this case he started his criminal history very young and in a very violent way. At 14, he participated in a violent robbery in which he shot the victim in the neck. Less than four months finishing up his post-release supervision in that case he committed a new felony, which was a drug trafficking offense, that was his first drug trafficking felony. While still on probation for that case he picked up his second drug trafficking felony. Less than to two years after that he picked up his third and fourth drug trafficking felony. As you see, the quantities begin to increase over time. And, once again, in that particular case this is the second time he was in possession of a firearm.

Other than some driving offenses he did stay out of trouble, I think, for the most significant period of time after those felonies. But, then, unfortunately, he committed the offenses in this case, which is a drug trafficking felony number five, gun possession number three and, as we see now, we're dealing with a variety of drugs. We're dealing with significant quantities. He's

facing mandatory minimums of multiple charges. So if nothing that was done before deterred him, no prior experience, no going to jail deterred him, if anything, he got worse after committing felonies at the state level.

Another reason I think it's important is it has to do with deterrence for this defendant, but deterrence that is the idea of sovereign citizens is something I've encountered before. It's something that comes up in the filings that were done on the defendant's behalf by Mr. Lee. Usually at the root of these things is the person who's claiming this sovereign citizenship is most often seeking to not accept criminal responsibility, not in the sense they're not pleading guilty but in the sense that they are not subject to the laws as I or you or anyone else in this courtroom or out on the street is, and that they can proceed under civil law they can proceed under contract law, they can derail effectively the criminal justice process, the criminal justice system --

THE COURT: Why should any of those issues though be to the detriment of Mr. Bowman? Because even though they may have been filed by some third party who has nothing to do with this case, why should that come into the calculus at all of the sentence for Mr. Bowman?

MR. KENT: It's my understanding, in particularly preparing for trial these are things Mr. Bowman has endorsed. The initial filings were things that were sent to the U. S. attorney's office, some of which I provided to the clerk's office, which I intended to introduce at trial where Mr. Bowman's signature is on those things endorsing them. He clearly has decided to endorse this.

I understand -- and we've talked about this before -- what Mr. Stewart's saying. Oftentimes, in my experience, it's outside forces, folks that have an interest in getting a foothold in the system, getting what they feel is a favorable ruling to the sovereign movement, often to the detriment of defendants or their families sort of selling them this way to proceed.

In this case, he clearly endorsed that. Even prior to us getting to the plea, and then listening to his -- when we were in here for the day to pick a jury he was say things on the record that were commensurate with being a sovereign citizen.

THE COURT: Except that he admitted his guilt and he pled guilty. So, again, even though it may have delayed the process, and it may have caused the government additional time and trouble of preparing for the trial, that was taken into account with regard to the calculation of the guideline range, wasn't it?

MR. KENT: Absolutely. Like I said, there's multiple reasons I believe for giving him something other than the minimum. I see the minimum as being triggered by the gun crime in connection with the drug trafficking crime being triggered by his, for example, the quantity of drugs. Here, you know, you need one prior to double the mandatory minimum on the drug count. Here we have numerous priors so. The primary argument for coming away from the bottom or the minimum is he a multi-, multi- convicted felon who has committed this very same type of crime on numerous occasions not only with regard to the drugs but with regard to possession of a firearm.

So I think those are the most significant -- certainly a sentence of 180 months is a significant sign to the defendant, Mr. Lee, to anyone who is deciding they're going to proceed on this: I want to proceed on contract law, head to sentencing, that this is not going to work. You're still going to wind up guilty. You're still going to wind up with a significant sentence. The primary thrust the government is arguing is the crime that was committed as well as the nature and extent of his criminal history. Thank you, Your Honor.

THE COURT: Thank you.

Mr. Bowman, at this time, you have the opportunity to address the Court and to tell the Court

and to tell me anything that you feel I should know before I make my decision regarding your sentence.

THE DEFENDANT: Yes, Your Honor. There's a couple of things I would like to object to on my PSI that I feel like I got -- that they gave me too many points on it. What they gave me for my criminal history, they gave me three points, and I want to object to that.

And taking responsibility, I want to object to that because I feel like I had ineffective counseling because he didn't give the probation officer information about me, and that's why I didn't get credit for the taking responsibility.

And, for the record, I would feel comfortable if you allow my power of attorney to step up and speak.

THE COURT: You say your "power of attorney?"

THE DEFENDANT: Yes, sir.

THE COURT: Well you have an appointed attorney in this case who is representing you in this matter. A person who may hold a power of attorney under state law, that's something totally different. That is not a person who can represent you in a court of law.

THE DEFENDANT: Okay. For the record, I would like to represent myself then. I don't want him representing me from the start. When I tried to fire him last time it wasn't allowed. And I don't want him

representing me because he's not representing me to the best of his ability. And everything I asked him to file, he's going against it.

And saying I'm sorry. I never admitted to a crime. I confessed to a crime that I did. And --

THE COURT: Let me stop you for a moment because Mr. Stewart has already said the last words that he needs to say in representing you. You say that you want to represent yourself, but we are here at the stage of this proceeding where you have an opportunity to address the Court and to tell me what you want to tell me. You can think about that as representing yourself if you want to but that's not really what the purpose is.

You have the opportunity right now, as a matter of law, to tell me what you think I need to hear so I would encourage you to use this opportunity to tell me what you feel I should know with regard to the issue of your sentence.

THE DEFENDANT: Your Honor, I feel like the paperwork I filed -- I wish you would look over it, and I just hope this is for the best. I don't really have nothing else to say, really, Your Honor. Just I'm sorry for what I did. And, like I said, I haven't committed a crime since 18 months. I been doing what I was supposed to do. That's all I have to say, Your Honor.

THE COURT: Okay. Thank you, Mr. Bowman.

THE DEFENDANT: Your Honor, can I say something right quick?

THE COURT: Yes. If you've thought of something else that you want to address you may do so at this time.

THE DEFENDANT: Is there a way that my power of attorney can speak for me?

THE COURT: Well, again, as I mentioned to you, a person who has a power of attorney is not an attorney at law. Those are two totally different things. For someone to speak on behalf of a criminal defendant in this court that person has to have a license to practice law and has to be licensed to practice within this court. The power of attorney that you're talking about does not have those qualifications and, therefore, even if I allow him to speak that would constitute his practicing law without a license, which is actually a criminal offense on his part. So, no, I do not allow for the conduct that would constitute a criminal offense to take place. If there's something you want to say, you can say it. But he can't come and say that on your behalf because he's not a lawyer.

THE DEFENDANT: Okay.

THE COURT: Was there anything else that you wanted to say?

THE DEFENDANT: No, sir.

THE COURT: Okay. Pursuant to the Sentencing Reform Act of 1984, and the case of *United States versus Booker*, it is the judgment of this court, having considered the factors noted in 18, U.S.C., Section 3553(a), that the defendant, Jerrell Tito Bowman, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for as follows. As to counts one and three for a term of 125 months, and for Count Two for a term of 60 months. Now the counts for one and three are to be concurrent to one another. The sentence for Count Two, the 60 months, is consecutive to the sentence with regard to counts one and three as required by law. Therefore, the total is a term of imprisonment of 185 months.

It is ordered that the defendant be required to support all dependents from prison earnings while incarcerated as outlined in the presentence report.

The Court recommends that the defendant be allowed to participate in any available educational and vocational opportunities while incarcerated.

The Court calls to the attention of the custodial authorities that the defendant has a history of substance abuse and recommends that the defendant be allowed to participate in any available substance abuse treatment

programs while incarcerated and, if eligible, to receive the benefit of 18, U.S.C., Section 3621(e)(2).

Upon release from imprisonment the defendant shall be placed on supervised release for a term as follows. With regard to counts one and three for a term of five years, and then as to Count Two for a term of three years. All of those terms are to be served concurrently so there would be a total five-year term of supervised release.

Within 72 hours of release from the custody of the Bureau of Prisons the defendant shall report in person to the probation office in the district to which he is released. While on supervised release, the defendant shall not commit another federal, state or local crime and shall comply with the standard conditions of supervised release as those have been adopted by the court in the Western District of North Carolina.

It is ordered that the defendant shall pay the United States a special assessment in the amount of $300.

The Court finds that the defendant does not have the ability to pay a fine or interest. And having considered the factors noted in 18, U.S.C., Section 3572(a), the Court will waive the payment of a fine and interest in this case. Payment of the criminal monetary penalties shall be due and payable immediately.

The Court has considered the financial and other information contained in the presentence report and finds that the following is feasible. If the defendant is unable to pay any monetary penalty immediately, during the period of imprisonment payments shall be made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program. Upon release from imprisonment, any remaining balance shall be paid in monthly installments of no less than $50 to commence within 60 days of release until paid in full.

Throughout the period of supervision the probation officer shall monitor the defendant's economic circumstances and shall report to the Court with recommendations, as warranted, any material changes that affect the defendant's ability the to pay any court-ordered penalties.

I will also include in the judgment that the recommendation that the defendant be placed at a location that has sufficient medical facilities to address the defendant's medical issues regarding his vision. I believe that should be sufficient to put the Bureau of Prisons on notice without putting something on the public record about a particular diagnosis.

MR. STEWART: Thank you, Your Honor.

THE COURT: My reasons for imposing the sentence

that I have are as follows. First of all, the sentence that I have imposed is just barely above the statutory mandatory minimum sentence that is called for. With regard to Count One there is a 120-month statutory minimum sentence. I don't have any discretion to go below that for Count One. For Count Two there is a statutory minimum sentence of 60 months that must be served consecutive to the count -- the sentence in Count One. Therefore, I have no discretion to impose a sentence any lower than 180 months.

I have imposed a sentence of 185 months and I've done so with a view toward the factors for sentencing under the sentencing statute Section 3553(a). With a case such as this that involves controlled substances, as well as firearms, I know, first of all, that the law treats that combination with substantial seriousness and it treats that combination with substantial seriousness for the obvious reason that it is a combination that creates tremendous danger.

It is a sad case that in this country that there are so many people, particularly young men, who literally lose their lives because of that combination of controlled substances and firearms. That's why the law says that the penalties are as harsh as they are. That's why we have the mandatory minimums that we see in this

case and that Congress, in its wisdom, have seen fit to take that discretion away from a judge with regard to the imposition of the sentence.

Under the circumstances of this case I believe that the combination with the very large quantity of the controlled substances at issue, the firearms at issue, a sentence such as what I have imposed does reflect the seriousness of the offense. It is also sufficient to provide adequate deterrence, not just specific deterrence for this defendant but general deterrence to anyone from the general public, that has any view of these proceedings or the general proceedings in this court to recognize that under federal law a combination of drugs and firearms such as what is found in this case comes with a substantial penalty.

I've taken into account the arguments of counsel. Obviously, defense counsel argued for a sentence that was five months less than what I imposed, and the prosecutor argued for a sentence that is higher than the one I have imposed. And it's not just that I split the difference. It is that I've taken into account generally what the Assistant United States attorney has said, but I don't put nearly as much weight on those factors as expressed by the Assistant United States attorney. Those are factors. They do come into play, but the big factors

here are the ones that are addressed by the mandatory minimums.

I have not taken into account the argument regarding the fact that the defendant has come to at least some degree of belief with regard to this sovereign citizen idea. The defendant still pleaded guilty. He admitted to the facts of what he has done. He has recognized his transgression of the law as the law is written. Therefore, even though the government was put to the task of preparing for the trial, because the plea was at the very last minute when we already had a jury pool in the room, that was taken into account with the defendant not receiving the acceptance of responsibility reduction. Therefore, I have discounted that part of the argument by the government because I believe that that's -- to the extent that it had an effect on these proceedings, the effect that it had has already been taken into account with regard to the calculation of the guideline range.

PROBATION OFFICER: Your Honor, may I approach before you finish?

THE COURT: You may.

(Discussion held off the record between the Court and the Probation Officer.)

(Back in open court.)

THE COURT: The probation officer has brought to my attention that I've made a couple of errors.

First of all, with regard to Count Three. The way that I pronounced the sentence, that both counts one and count three were at 125 months, it's 125 months with regard to Count One, but it's only 120 months as to Count Three.

The other thing is with regard to the term of supervised release. As to Count One, I said that was a term of supervised release of five years. Because there is an 851 notice in this case that term of supervised release, with regard to Count One, is a statutory minimum of eight years. Therefore, it is eight years as to Count One, three years as to Count Two, five years as to Count Three, with all of those terms to be served concurrently. Therefore, it would be a supervised release term of eight years not five years. Again, that is a statutory mandatory minimum with regard to that supervised release term.

Again, even with those corrections -- obviously, one technical correction to the term of incarceration has no effect on the aggregate term and then a correction with regard to the supervised release term to account for the mandatory minimum. My reasons for imposing the sentence are exactly as what I have said before.

Mr. Stewart, are there any other issues regarding either the sentence or the judgment that need to be addressed?

MR. STEWART: If Your Honor please. There was the issue about the -- I believe the forfeiture of the weapon that was taken into custody. We were presented with a consent order to effect that but we are unwilling to consent to that.

THE COURT: Okay. Mr. Kent, what do you want to do with regard to the issue of forfeiture?

MR. KENT: Yes, Your Honor. The forfeiture in this case is governed by 18, U.S. Code 924(d) and 21, U.S.C. 64. I would ask with the refusal to sign the proposed consent order of judgment of forfeiture the Court find forfeiture between the clear nexus between the gun and ammunition that's in the forfeiture order ,or subject to forfeiture and demonstrated by the defendant's own admission in the factual bases. He possessed this gun in this case as if in furtherance of his drug activities. We ask the Court to announce that pronouncement, of course, if we could prepare a preliminary forfeiture notice for you.

THE COURT: I do not have before me what you have proposed to notice. You mentioned a firearm but I don't have the details there.

MR. KENT: Yes, Your Honor. I can hand up what was a proposed consent order. I can strike "firearm, ammunition and magazine," and I can hand that up to the Court.

THE COURT: You may approach and hand that up.

In the interest of time, Mr. Kent, can you point to me in the offense conduct, as set out in the presentence report, where the reference is to the particular firearm that you want forfeited?

MR. KENT: Yes, Your Honor.

THE COURT: I think I see it in paragraph 19?

MR. KENT: Correct, Your Honor.

THE COURT: Okay. Let me take a look that this. Well, in accordance with the law, the Court will find that as set forth in the factual basis, which was accepted at the time of the plea, and as recounted in the presentence report to which there was no objection, and particularly as set forth in paragraph 19 of the presentence report, the firearm in question, a Sig Sauer P-222 9mm caliber pistol bearing serial Number 24B330268, with magazine and ammunition, was in fact a firearm that forms the basis for and the factual basis for the charge to which the defendant has pleaded in this matter, that being Count Two and, also, Count Three. Therefore, that particular item is subject to forfeiture under the law

and, therefore, the Court will include and incorporate into the judgment the forfeiture of that particular firearm as described.

Mr. Kent, is there anything else on that issue that needs to be addressed?

MR. KENT: No, sir.

THE COURT: Anything else regarding any other issue that we need to take up at this time?

MR. KENT: Not from the government.

THE COURT: Anything else, Mr. Stewart?

MR. STEWART: Your Honor, please. The judgment that was just pronounced. As I mentioned to the Court, it's my intention to give notice of -- oral notice of appeal on behalf of Mr. Bowman to the judgment that was entered. I will supersede, or follow that, with written notice on Mr. Bowman's behalf.

THE COURT: Okay. Mr. Bowman, you have the right to appeal the sentence that I have imposed to Fourth Circuit Court of Appeals. If you choose to appeal you must file a written notice of appeal with the clerk of this court within a period of 14 calendar days following the date of the entry of the final judgment in this case. If you choose to appeal but do not have the funds with which to appeal you have previously been determined to be indigent and, therefore, you may appeal at government

expense. Do you understand this right of appeal?

I want to emphasize to you that the law requires that a notice of appeal be presented in writing. Therefore, even though Mr. Stewart is looking out for your interests and has informed the Court that you intend to appeal, that notice of appeal that he gave orally here in court is insufficient to institute an appeal on your behalf. Do you understand this appeal right as I have explained it to you?

THE DEFENDANT: Yes, sir.

THE COURT: In closing. Mr. Bowman, obviously, the sentence that I've imposed, and the sentence that the law requires that I impose under the circumstances of this case, is quite harsh but that doesn't mean that this period of time is going to be completely unproductive for you. You can use this as a time to, in essence, in substance, retool your life so that when you come out that you have the opportunity to be a father and to be a productive citizen. That's what we want for you. That's what Mr. Stewart is looking out for your interests for. That's even what the prosecutor is wanting to do. We want to get you directed in a different way and certainly hope that you get the opportunity to do that.

I realize that substance abuse and addiction issues have been a part of what has sent you in the wrong

direction, but I certainly hope that you can conquer those difficulties in your life and get on a much better path. I wish you the best, Mr. Bowman. I certainly hope that you can be on a god path from here.

The defendant is remanded to the marshal.

(Off the record at 11:05 a.m.)

**CERTIFICATE**

I, Tracy Rae Dunlap, RMR, CRR, an Official Court Reporter for the United States District Court for the Western District of North Carolina, do hereby certify that I transcribed, by machine shorthand, from the court's audio recording system, the proceedings had in the case of UNITED STATES OF AMERICA versus JERRELL TITO BOWMAN, Case Number 1:19-CR-45, on October 22, 2020.

In witness whereof, I have hereto subscribed my name, this 14th day of January 2021.

__/S/__Tracy Rae Dunlap__
TRACY RAE DUNLAP, RMR, CRR
OFFICIAL COURT REPORTER